1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    KEVIN ALEXANDRO ARELLANO,                    No.  2:13-cv-2569 AC

12                    Plaintiff,

13           v.                                     ORDER

14    CAROLYN W. COLVIN, Acting
      Commissioner of Social Security,

15
                      Defendant.

16

17

18           Plaintiff, a minor, seeks judicial review of a final decision of the Commissioner of Social

19    Security ("Commissioner") denying his application for Supplemental Security Income ("SSI")

20    under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.  The parties'

21    cross motions for summary judgment are pending.  For the reasons discussed below, the court

22    will grant plaintiff's motion for summary judgment to the degree it seeks a remand, and will deny

23    the Commissioner's cross-motion for summary judgment.

24                                  I.  PROCEDURAL BACKGROUND

25           Plaintiff's mother filed an application on his behalf for SSI benefits on May 27, 2009,

26    alleging disability beginning on September 28, 2004, the day plaintiff was born.  Administrative

27    ////

28    ////

                                                     1

1 Record ("AR") 23.[1]  Plaintiff's application was disapproved initially and on rehearing.

2 AR 97-100 (September 29, 2009) & 105-08 (January 25, 2010).  On April 20, 2012, a hearing

3 was held at Stockton, California, before administrative law judge ("ALJ") Timothy S. Snelling.

4 AR 42-86 (transcript of hearing).  Plaintiff was represented by counsel, and both plaintiff and his

5 mother testified.  Id.  In a decision dated May 25, 2012, the ALJ issued an unfavorable decision,

6 finding plaintiff "not disabled" under Section 1614(a)(3)(C) of the Act, 42 U.S.C.

7 § 1382c(a)(3)(C).  AR 20-41 (decision and exhibits).  The ALJ made the following findings:

8
9 > 1. The claimant was born on September 28, 2004. Therefore, he was a preschooler on May 27, 2009, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

10
11 > 2. The claimant has not engaged in substantial gainful activity since May 27, 2009, the application date (20 CFR 416.924(b) and 416.971 et seq.).

12
13
14 > 3. The claimant has the following medically severe combination of impairments: Language disorder not otherwise specified, learning disorder not otherwise specified, borderline intellectual functioning, and asthma (20 CFR 416.924(c)).

15
16 > 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

17
18 > There are no opinions or suggestions in the treatment records of any medical condition or functional limitations that meet or medically equal the criteria and severity of any listed impairment.

19
20 > 5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

21 AR 26.  The ALJ concluded:

22
23 > 6. The claimant has not been disabled, as defined by the Social Security Act, since may 27, 2009, the date the application was filed (20 CFR 416.9254(a)).

24 Plaintiff requested review of the ALJ's decision by the Appeals Council ("Council"), but

25 the Council denied review on October 28, 2013, leaving the ALJ's decision as the final decision

26 of the Commissioner of Social Security.  AR 1-6 & 17-19.

27
_____

28 [1]  The Administrative Record is electronically filed at ECF No. 12.

Plaintiff filed this action on December 11, 2013.  ECF No. 1; see 42 U.S.C. § 1383(c)(3).
Plaintiff was granted leave to proceed in forma pauperis and the parties consented to the
jurisdiction of the magistrate judge.  ECF Nos. 3, 7 & 9.  The Commissioner has filed the
Administrative Record, and the parties have filed the pending cross-motions for summary
judgment.  ECF Nos. 12, 13 & 16.  Those motions are now fully briefed.  ECF Nos. 13, 16 & 19.

Plaintiff seeks reversal of the ALJ's decision on four grounds: (1) the ALJ failed to
discuss statements made by plaintiff's special education teacher, Ms. Christina Rusk, regarding
plaintiff's actual level of functioning; (2) the ALJ failed to articulate specific and legitimate
reasons for not crediting examining doctor Kassam's opinions; (3) the ALJ did not adequately
explain why he did not credit the Commissioner's own consulting doctors' opinions that plaintiff
had "marked" limitations in the domain Interacting and Relating with Others; and (4) the ALJ did
not analyze the impact of plaintiff's bowel and urinary difficulties in finding plaintiff had no
limitations in the domains Caring for Yourself and Health and Physical Well-Being.

The Commissioner argues that: (1) the ALJ was not required to discuss Ms. Rusk's
statements; (2) Dr. Kassam did not find that plaintiff had "marked limitations" in Interacting and
Relating to Others; (3) the ALJ permissibly found that the non-examining consultants' opinions
were not supported by the rest of the evidence, and substantial evidence supported the ALJ's
resolution of the evidence; and (4) the ALJ rationally interpreted the evidence to find that plaintiff
did not have marked limitations.

## II.  FACTUAL BACKGROUND

Plaintiff was born on September 28, 2004, the alleged onset of disability date.  AR 26
& 27.  Accordingly, plaintiff was 4 years old, and a "preschool" age child on the application date.
See, 20 C.F.R. § 416.926a(g)(2) ("Age group descriptors"), (h)(2) (same), (i)(2) (same), (j)(2)
(same); (k)(2) (same), (l)(2) (same).  Plaintiff was 7 years old, and a "school-age child," at the
time of the April 20, 2012 administrative hearing.  AR 26.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is
supported by substantial evidence and if the Commissioner applied the correct legal standards."

1   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

2   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

3   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).[2]

4        Substantial evidence is "more than a mere scintilla," but "may be less than a

5   preponderance."  Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

6   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

7   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

8   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

9   suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

10        Although this court cannot substitute its discretion for that of the Commissioner, the court

11   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

12   evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of HHS,

13   846 F.2d 573, 576 (9th Cir.1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

14   court must consider both evidence that supports and evidence that detracts from the ALJ's

15   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

16        "The ALJ is responsible for determining credibility, resolving conflicts in medical

17   testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

18   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

19   which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v. Barnhart,

20   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

21   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  Orn

22   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

23   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

24   evidence that the ALJ did not discuss").

25   _____

26   [2]  The right to judicial review of determinations under Title XVI is provided by 42 U.S.C.
§ 1383(c)(3), which provides that "The final determination of the Commissioner of Social
Security after a hearing under paragraph (1) shall be subject to judicial review as provided in
27   section 405(g) of this title to the same extent as the Commissioner's final determinations under
section 405 of this title."

28

1    The court will not reverse the Commissioner's decision if it is based on harmless error,

2    which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

3    ultimate nondisability determination.'"  Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

4    (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400

5    F.3d 676, 679 (9th Cir. 2005).

6                          IV.  RELEVANT LAW – TITLE XVI

7        Supplemental Security Income ("SSI") is available under Title XVI of the Social Security

8    Act (the "Act") for every income-eligible individual who is "disabled."  42 U.S.C. § 1381a;

9    Department of HHS v. Chater, 163 F.3d 1129, 1133 (9th Cir. 1998) ("The Social Security Act

10   directs the Commissioner of the Social Security Administration to provide benefits to all

11   individuals who meet the eligibility criteria").  An individual under the age of 18, such as plaintiff

12   here, is "disabled" if he meets two criteria, set forth at 42 U.S.C. § 1382c(a)(3)(C)(i):

13               First, he must have an impairment that results in marked and severe
                 functional limitations.  He satisfies this criterion if his impairment
14               matches one of those described in the Listing [Listing of
                 Impairments, 20 CFR Pt. 404, Subpart. P, App. 1].  Second, the
15               impairment must have lasted or can be expected to last for a
                 continuous period of at least 12 months
16

17   Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000); see also, 20 CFR § 416.906

18   ("Basic definition of disability for children").  "The claimant bears the burden of establishing a

19   prima facie case of disability."  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995) (citing

20   Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992)), cert. denied, 517 U.S. 1122 (1996);

21   Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

22       The Commissioner has established a three-step sequential evaluation process for the ALJ

23   to follow when considering the disability application of a minor claimant.  20 C.F.R.

24   § 416.924(a); see, e.g., Rose v. Colvin, 2013 WL 5476513, at *2 (E.D. Cal. 2013) (Drozd, M.J.)

25   (applying the three-step sequential evaluation process in a child disability case); Augustine ex rel.

26   Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1150 (C.D. Cal. 2008) (same); Smith ex rel. Enge v.

27   Massanari, 139 F. Supp. 2d 1128, 1132 (C.D. Cal. 2001) (same).

28   ////

1    At Step One, the ALJ must determine whether the claimant is engaged in "substantial

2  gainful activity."  20 C.F.R. § 416.924(a).  If the claimant engages in substantial gainful activity,

3  he is not disabled and his claim will be denied.  Id.  If the claimant is not engaged in substantial

4  gainful activity, the ALJ goes to Step Two.

5    At Step Two, the ALJ determines whether the claimant has a "severe" medically

6  determinable impairment or combination of impairments.  Id.  For a child, a medically

7  determinable impairment or combination of impairments is not severe if it is a "slight abnormality

8  or a combination of slight abnormalities that causes no more than minimal functional limitations

9  . . .."  Id. § 416.924(c).  If the claimant's impairment is not severe, the child is not disabled, and

10  SSI is denied at this step.  Id. § 416.924(a), (c).  If the impairment is severe, the ALJ goes to Step

11  Three.

12    At Step Three, the ALJ determines whether the claimant's impairment meets, medically

13  equals, or functionally equals an impairment in the Listing of Impairments (the "Listing"), 20

14  C.F.R. § 404, Subpart P, Appendix 1.  If the claimant's impairment meets or equals an

15  impairment in the Listing, and meets the durational requirement, disability is presumed and

16  benefits are awarded.  Id. § 416.924(a), (d).

17    Step Three encompasses two analytical steps.  First, it must be determined whether the

18  claimant's impairment meets or medically equals a Listing.  Second, the impairment must also

19  satisfy all of the criteria of the Listing.  20 C.F.R. § 416.925(d).  The mere diagnosis of an

20  impairment in the Listing is insufficient, in itself, to sustain a finding of disability.  Young v.

21  Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

22    If the claimant does not meet or medically equal a Listing, he may still be considered

23  disabled if an impairment results in limitations that "functionally equal the listings."  20 C.F.R.

24  § 416.926a(a).  In determining whether the severe impairment functionally equals the listings, the

25  ALJ must assess the claimant's functioning in six "domains."  The "domains" are broad areas of

26  functioning that are "intended to capture all of what a child can and cannot do."  Id.,

27  § 416.924a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and

28  completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring himself; and (6) health and physical wellbeing.  20 C.F.R. § 416.926a(b)(1).
To "functionally equal" the listings, the impairment must result in "marked" limitations in two
domains or an "extreme" limitation in one domain.  Id. § 416.926a(a), (d).  In making this
assessment, the ALJ looks at "how appropriately, effectively, and independently" the claimant
preforms his activities "compared to the performance of other children [the claimant's] age who
do not have impairments."  Id. § 416.926a(b).

Plaintiff has a "marked" limitation in a domain if his impairment "interferes seriously"
with his "ability to independently initiate, sustain, or complete activities."  20 C.F.R.
§ 416.926a(e)(2)(i).  The regulations also provide that "marked" limitations means a limitation
that is "more than moderate" but "less than extreme."  Id.  Plaintiff has an "extreme" limitation in
a domain if his impairment "interferes very seriously" with his "ability to independently initiate,
sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  The regulations also provide that
an "extreme" limitation also means a limitation that is "more than marked."  Id.  However,
"extreme" limitation does not mean a "total lack or loss of ability to function."  Id.

## IV.  THE DOMAINS AT ISSUE

The domains at issue here are: (1) Acquiring and Using Information (20 C.F.R.
§ 416.926a(b)(1)(i)); (2) Attending and Completing Tasks (id., § 416.926a(b)(1)(ii));
(3) Interacting and Relating with Others (id., § 416.926a(b)(1)(iii)); (4) Caring for Yourself (id.,
§ 416.926a(b)(1)(v)); and Health and Physical Well-Being (id., § 416.926a(b)(1)(vi)).

The ALJ carefully described the age-appropriate functioning expected of a child in each
domain, AR 30-36, and the court will not repeat them here.  The ALJ reviewed and described
evidence in the record, and concluded that plaintiff had: "no limitations" in the domain of Caring
for Yourself; and "less than marked limitations" in the domains of Acquiring and Using
Information, Attending and Completing Tasks, Interacting and Relating with Others, and Health
and Physical Well-Being.  AR 30 36.

////

////

////

1          V.  THE ALJ's REVIEW OF THE RECORD

2          A.      Dr. Kassam

3          The ALJ reviewed the medical record, turning first to an October 22, 2007 pediatric

4   evaluation by Diamond Kassam, M.D., when plaintiff was 3 years old.  AR 28; AR 291-93

5   ("Exhibit 1F" to the AR).  In addressing issues covered by the Acquiring and Using Information

6   domain, Dr. Kassam stated that plaintiff had "problems expressing ideas and understanding things

7   because of limited vocabulary."  AR 293.  However, Dr. Kassam also stated that plaintiff's

8   "receptive language" was good, and that he "understands all instructions."  Id.

9          In addressing issues covered by the Interacting with Others domain, Dr. Kassam

10  diagnosed plaintiff as having "severe behavior problems with hyperactivity and destructive and

11  disruptive behavior."  Id.  He further stated that plaintiff was "very aggressive," had "difficulty

12  sustaining emotional connections with other children," had "trouble keeping friends," and that

13  "[i]nteracting and relating with others is difficult."  Id.

14         B.      Dr. Apellanes.

15         The ALJ next considered the March 6, 2009 examination of A.B. Apellanes, M.D., when

16  plaintiff was 4 years old.  AR 28; AR 299 ("Exhibit 3F").  The form Dr. Apellanes completed

17  asked for a description of "the patient's limitations," without specifying any of the domains.

18  AR 299.  Dr. Apellanes' response appears to cover issues covered by the Acquiring and Using

19  Information domain, in that he states that plaintiff "has poor cognitive ability."  Id.  Dr. Apellanes

20  also describes plaintiff as having "developmental delay" and "hyperactivity," with an "indefinite"

21  expected duration.  Id.

22         C.      Clinton Lukeroth, Ed. D.

23         The ALJ turned next to the May 23, 2009 psychological evaluation of Clinton Lukeroth,

24  Ed. D., conducted a few days before plaintiff filed his SSI claim.  AR 28; AR 300-05

25  ("Exhibit 4F").  Dr. Lukeroth administered tests to plaintiff "to obtain an assessment of his

26  developmental status."  AR 300.

27         In addressing issues covered by the Acquiring and Using Information domain, Dr.

28  Lukeroth found that these tests showed that plaintiff "is functioning in the lower extreme range of

8

General Cognitive Ability (CGA)." AR 302.  Specifically, plaintiff scored "in the deficient range of functioning for verbal activities."  Id.  The Verbal score includes "the ability to follow instructions . . . and vocabulary knowledge."  Id.  However, plaintiff's "nonverbal cognitive functioning could be as high as low average."  On another assessment, plaintiff's assessment in the "communication domain" was "within the deficient range of functioning."  AR 303. Dr. Lukeroth cautioned however, that because plaintiff was so uncooperative during much of the testing, "[t]he validity of the current assessment results is unknown."  AR 301.  Indeed, he stated that "[i]t is possible that the current results underestimate his true abilities."  Id.

Nevertheless, Dr. Lukeroth concluded that "[t]he current assessment results demonstrate that his [plaintiff's] abilities are in the deficient range on measures of verbal functioning."  Id.  He also states that "[t]he current assessment results are consistent in demonstrating that Kevin's language skills are severely delayed."  AR 304.  In looking for an explanation of plaintiff's assessment, Dr. Lukeroth opined that plaintiff "does not evidence global developmental delays," and that rather, "[i]t is more likely that he has a language disability and possible learning disabilities."  Id.  Dr. Lukeroth also opined that plaintiff's scores "may be compromised by bilingualism."  Id.  Dr. Lukeroth also found that plaintiff "evidenced a high level of inattention, impulsivity, . . . excessive physical activity . . . and emotional volatility."  AR 304.  Dr. Lukeroth concluded by stating that plaintiff's mother could benefit from parental training.  Id.

D.      Carol Crawford, M.A.

The ALJ next considered the August 20, 2009 evaluation of Carol Crawford, M.A., a speech and language pathologist.  AR 28; AR 306-08 ("Exhibit 5F").  In the domain of Acquiring and Using Information, Ms. Crawford found that plaintiff had "moderately delayed language skills."  AR 306.  Specifically, she found that plaintiff had "a mild receptive language delay [listening] and moderate expressive language delay," and that overall, "[h]is language age equivalent was equal to that of a 3 year, 2 month old child."  AR 307.  Thus, plaintiff's language age was 1 year, 8 months below his chronological age.  Id.

E.      John A. Chellsen, Ph. D.

The ALJ next considered the December 30, 2011 evaluation of John A. Chellsen, Ph. D., a

9

1   clinical and forensic psychologist, when plaintiff was 7 years old.  AR 29; AR 384-87

2   ("Exhibit 15F").  Dr. Chellsen conducted an assessment of plaintiff's "cognitive functioning."

3   AR 384.  In the domain of Acquiring and Using Information, Dr. Chellsen found that plaintiff

4   was "in the borderline range" for cognitive functioning.  AR 387.  Specifically, he found that

5   plaintiff had "very low performance in the verbal comprehension and working memory subtests."

6   AC 387.

7        Dr. Chellsen also found that plaintiff was "above average on some of the perceptual

8   reasoning subtests."  Plaintiff was apparently tested in English, and Dr. Chellsen opined that

9   "[t]esting in Spanish may allow Kevin to show better performance in his verbal skills."  Id.

10       F.    School records

11       The ALJ next considered "[s]chool records."  AR 29.  He considered an October 21, 2009

12  "Language, Speech and Hearing Evaluation" by Clair Trujillo, M.A, CCC-SLP, a language,

13  speech and hearing specialist.  AR 322-50 ("Exhibit 8F").  In the domain of Acquiring and Using

14  Information, Ms. Trujillo's report recommended that plaintiff receive "remedial speech and

15  language services," as his "language impairment, in both Spanish and English, adversely affects

16  educational performance."  AR 325.

17       The ALJ also considered plaintiff's "Individualized Education Program" reports from

18  March 29, 2011, AR 363-78 ("Exhibit 13F"), and March 23, 2012, AR 392-412 ("Exhibit 17F").

19  Without addressing any individual findings, the ALJ concluded that the records showed "steady

20  improvement" since plaintiff's enrollment in special programs in October 2009.  AR 29.  In the

21  domain of Acquiring and Using Information, the March 2011 IEP reports "tremendous

22  improvement" because plaintiff can "write his first and last name on his own," and can "copy a

23  simply sentence from the board," whereas at the beginning of the school year, "he could only

24  write the 'K' in the beginning of his name."  AR 365.  The March 2012 IEP reports some

25  progress in math, but a "mild-moderate language impairment in comparison to his chronological

26  age."  AR 396.  The report also states that plaintiff's "oral language skills and listening

27  comprehension, his fluency with academic tasks, and ability to apply academic knowledge are

28  within the very low range."  AR 410.

1    In the domain of Attention and Completing Tasks, the March 2011 IEP states that plaintiff

2    has "a difficult time completing a task." AR 375. Instead of doing so, plaintiff "can play with

3    items in his desk, talk to his peers, and attempt to get out of his seat, all to avoid a task." Id. In

4    general, plaintiff "displays significant off task behavior within multiple settings." AR 367. The

5    March 2012 IEP states that the IEP team continues to be "concerned" about plaintiff's "off-task

6    behaviors." AR 393.

7    In the domain of Interacting with Others, the March 2011 IEP states that although plaintiff

8    is "a very sweet and affectionate little boy," he "can become physically aggressive toward

9    children on the playground." AR 365. The March 2012 IEP, far from reporting improvement or

10   progress, reports even more difficulties in this area. In addition to other disruptive behaviors

11   "that impede his learning and the learning of others," plaintiff still "displays physical aggression

12   toward peers." AR 396. He hits and pushes other students, and "has aggressive acts toward a

13   peer 3 out [of] 5 days a week." Id.

14   G.    Childhood Disability Evaluation Form

15   Finally, the ALJ considered a September 29, 2009 State "Childhood Disability Evaluation

16   Form," completed when plaintiff was 5 years old, soon after he had applied for benefits. AR 29;

17   AR 309-15 ("Exhibit 6F"). The ALJ found that this was "a well-annotated and supported

18   assessment" by the reviewing doctors. Id. It appears that the evaluation form is signed by non-

19   examining (consulting) doctors, as the notes relating to its conclusions refer only to the earlier

20   examinations of the plaintiff by others. AR 314. The evaluation concludes that plaintiff has

21   "marked" limitations in the domain Interacting with and Relating with Others. AR 311. It finds

22   that plaintiff has "less than marked" limitations in the domains Acquiring and Using Information

23   and Attending and Completing Tasks. AR 311. It finds that plaintiff has "no limitation" in the

24   domain Moving About and Manipulating Objects." Id.

25   The doctors left blank all of the "limitations" options for the domains Caring for Yourself

26   and Health and Physical Well-Being. AR 311 & 312. For the Health domain however, the

27   doctors noted that "the claimant takes no medication." AR 312.

28   ////

11

1

VI.  THE ALJ's DECISION

2       At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity

3  since May 27, 2009, the date plaintiff applied for SSI benefits.  AR 26.

4       At Step Two, the ALJ found that plaintiff suffers from the following severe impairments:

5  language disorder not otherwise specified; learning disorder not otherwise specified; borderline

6  intellectual functioning; and asthma.  Id.

7       At Step Three, the ALJ found that plaintiff does not have an impairment or combination

8  of impairments that meets or medically equals the severity of one of the listed impairments in the

9  Listings.  Id.  He also found that plaintiff has no impairment or combination of impairments that

10 functionally equals the severity of the Listings.   Id.

11      Overall, the ALJ found that plaintiff had "mental development issues that cause some

12 limitation in functioning."  AR 28.  However, he concluded that "while several doctors,

13 psychologists, and speech language pathologists have noted language and speech delay, none of

14 them have opined or suggested in their records that the claimant has marked limitation in any of

15 the six childhood functional domains."  AR 30.[3]  He found that "since being enrolled in special

16 education programs and followed through annual IEP evaluations, he has made progress in most

17 areas."  Id.  The ALJ further concluded that although plaintiff "does have borderline IQ," with

18 appropriate "guidance and evaluation by school staff, pathologist and psychologists," plaintiff "is

19 able to function satisfactorily despite his limitations."  AR 30.

20      A.      Acquiring and Using Information

21      The ALJ acknowledged that plaintiff "has been diagnosed as borderline intellectual

22 functioning with speech and language limitations," and "has some difficulty with impulse control

23 and inattention."  AR 31.  However, the ALJ concluded that "claimant has less than marked

24 limitation" in this domain, apparently because the plaintiff "is able to respond to redirection

25 commands," and "was pleasant and responsive and did not display any anger or impulsivity" at

26

_____

[3]  As discussed above, however, the consulting physicians did conclude that plaintiff had
27 "marked" limitations in the domain of Interacting and Relating to Others.  The ALJ later appears
   to acknowledge this, but rejects their conclusion, as discussed below.

28

1  the ALJ hearing.  Id.  The ALJ makes no express reference to any of the evidence in the record in

2  his conclusion or in his discussion of the applicable standards.

3        B.     <u>Attending and Completing Tasks</u>

4        The ALJ here repeated his acknowledgement from the Acquiring and Using Information

5  domain, that that plaintiff "has been diagnosed as borderline intellectual functioning with speech

6  and language limitations," and "has some difficulty with impulse control and inattention."

7  AR 32.  However, the ALJ concluded that "claimant has less than marked limitation" in this

8  domain, by repeating his conclusion from the Acquiring and Using Information domain, that

9  plaintiff "is able to respond to redirection commands."  AR 32.  The ALJ added here, that

10  plaintiff "responded well to commands from others."  Id.  Once again, the conclusion makes no

11  express reference to any of the evidence in the record or in his discussion of the applicable

12  standards.

13        C.     <u>Interacting and relating with others</u>

14        The ALJ states that plaintiff "has friends at school, and has not had significant behavior

15  problems in getting along with others."  AR 33.  The ALJ acknowledges that plaintiff has "speech

16  and language difficulties" making interpersonal communication difficult, but, according to the

17  ALJ, "there is no evidence in the record showing that the claimant has communicative or

18  behavioral problems that caused marked limitation in this domain."  The ALJ does not refer to

19  any specific part of the record that supports his conclusion that plaintiff has no significant

20  behavior problems.  He does not, for example, refer to the consulting physicians, who concluded

21  that plaintiff <u>had</u> "marked" limitations in the domain of Interacting and Relating with Others.

22        D.     <u>Caring for Yourself and Health and Physical Well-Being</u>

23        The ALJ found that plaintiff "has no limitation in the ability to care for himself," and "less

24  than marked limitation in health and physical well-being."  AR 35-36.  In explanation, the ALJ

25  states that "[t]here is no evidence in the record or allegations by the claimant or other persons

26  suggesting any limitation" in the domain Caring for Yourself.  AR 35.  As for Health and

27  Physical Well-Being, the ALJ acknowledges that plaintiff "has some problem with bladder

28  ////

1 control," but he finds that it is "a behavioral issue involving parental training as opposed to a

2 diagnosed medical condition." AR 36.

3 VII. ANALYSIS

4 A. The ALJ Committed Legal Error By Not Discussing the Teacher Inquiry

5 Plaintiff moves for summary judgment on the ground that the ALJ erred by failing to

6 discuss the comments of plaintiff's Special Education teacher, Ms. Rusk, located at Exhibit 17E

7 of the Administrative Record. ECF No. 13-1 at 12-16. Ms. Rusk provided a "Teacher Inquiry"

8 on February 14, 2012, when plaintiff was 7 years old and in Second Grade, and almost three years

9 after plaintiff applied for benefits. AR 282-84. At the time, Ms. Rusk had known plaintiff for

10 one and one-half years, in her professional capacity as his special education teacher. AR 282.

11 The Teacher's Inquiry is the only document that presented Ms. Rusk's unmediated views,

12 addressed specifically to the six domains relevant to the question of plaintiff's impairments.[4] The

13 Commissioner does not dispute the omission, but argues that the ALJ was not required to

14 consider it, and that any error in failure to consider it was harmless.

15 In the domain of Acquiring and Using Information, Ms. Rusk reported that plaintiff could

16 not learn age-appropriate skills involved in reading, writing and math. AR 282. Plaintiff was,

17 instead, at a First Grade level in reading and math, and was at a kindergarten level in writing.

18 AR 283. Ms. Rusk specifically reported that plaintiff "has significant impairments in memory,

19 visual processing, and attention." Id. She also reported that plaintiff "speaks in 3-4 word

20 utterances." Id.[5]

21

22 [4] Ms. Rusk's views, in her professional capacity as plaintiff's special education teacher, can be
found (1) in her Teacher's Inquiry, (2) presumably incorporated into two committee reports, and
23 (3) on plaintiff's Second Grade Report Card. The ALJ did comment on the two committee
reports by stating only that plaintiff's "annual review has shown steady improvement." AR 29.
24 He commented most extensively on plaintiff's Second Grade Report Card, in which Ms. Rusk
presumably addressed her remarks to plaintiff's parents. Id. The ALJ noted that Ms. Rusk stated
25 that in the first quarter, plaintiff had "made progress, most notable in math," he had a "difficult
second quarter," and "rebounded" in the third. Id. However, the ALJ did not address or comment
26 upon Ms. Rusk's assertions in her Teacher's Inquiry, the one place Ms. Rusk specifically and
formally addressed plaintiff's functioning in the six domains pertinent to the ALJ's decision.
27 [5] See 20 C.F.R. § 416.926a(g)(2)(ii) (toddlers, 1-3 years old, "should begin . . . to produce an
increasing number of words and grammatically correct simple sentences and questions").
28

1    In the domain of Attending and Completing Tasks, Ms. Rusk reported that plaintiff "has

2   significant difficulty sustaining to a task for more than 10 mins."  AR 283.

3    In the domain of Interacting and Relating with Others, Ms. Rusk reported that plaintiff

4   "has difficulty interacting with peers without conflict (hitting, biting, punching)," does not initiate

5   and sustain emotional connections with others, and does not cooperate with others.  AR 283.

6               1.    Consideration of the Teacher Inquiry is mandatory, not permissive

7    Plaintiff asserts that the ALJ "violated" SSR 06-03p by failing to discuss Ms. Rusk's

8   Teacher Inquiry.  ECF No. 12.  The Commissioner asserts that the cited interpretive rule makes

9   consideration of evidence from "other sources" such as teachers, "permissive" only.  The court

10  disagrees with the Commissioner.

11   The Commissioner accurately points out that one regulation and one interpretive rule

12  provide that the Commissioner "may also use evidence from other sources to show the severity of

13  your impairment(s) and . . . how you typically function compared to children your age who do not

14  have impairments."  20 C.F.R § 416.913(d) (emphasis added);  SSR 06-03P, 2006 WL 2329939,

15  at *2 (same).  However, the remainder of the regulations, and specifically those addressed to the

16  impairments of children, make clear that the word "may" does make the review of teacher

17  descriptions that are in the case record permissive.  To the contrary, the regulations dealing

18  specifically with determinations of disabilities in children make review of teacher descriptions

19  mandatory, so long as those descriptions are in the case record:  "When we decide whether you

20  have a 'marked' or an 'extreme' limitation, . . . [w]e will consider all the relevant information in

21  your case record that helps us determine you functioning, including . . . the descriptions we have

22  about your function from your . . . teachers . . .."  20 C.F.R. § 416.926a(e)(1)(i) (emphasis added).

23   The word "may" can only be read to refer to the fact that teacher descriptions "may" be in

24  the child's case record, or they may not be.  20 CFR § 416.924a(a) ("We consider all relevant

25  information (i.e., evidence) in your case record.  The evidence in your case record may include

26  information from . . . other medical sources not listed in § 416.913(a), such as . . . nonmedical

27  sources, such as your parents, teachers, and other people who know you.") (emphasis added); 20

28  C.F.R. § 416.924a(a)(2)(iii) (emphasis added) ( "whenever possible and appropriate, we will try

1   to get information from people who can tell us about the effects of your impairment(s) on your

2   activities and how you function on a day-to-day basis.  These other people may include, but are

3   not limited to . . . your teachers and other school personnel.") (emphasis added).

4          Thus, the Commissioner "may" consider descriptions from "other sources" not because

5   such consideration is permissive, but because such descriptions may or may not be in the case

6   record.  However, if they are in the case record, the Commissioner must consider them.  It is an

7   unreasonable reading of the regulation to say that that if the "other source" descriptions are in the

8   case record, the Commissioner may simply ignore them, silently and without any explanation, as

9   the ALJ did here.  Accordingly, a teacher's report that is probative of plaintiff's impairments may

10  not be silently disregarded by the ALJ.  If the ALJ disagrees with the teacher's views, he should

11  say so, and explain his reasons.

12         In addition, as plaintiff argues, in the Ninth Circuit, the ALJ "<u>must</u> consider lay witness

13  testimony," at least in the context of determining the severity of an adult's impairment.  <u>Stout v.</u>

14  <u>Commissioner</u>,  454 F.3d 1050, 1053 (9th Cir. 2006) (emphasis added) (citing 20 C.F.R.

15  § 416.913(d)).  <u>Stout</u> involved lay testimony, rather than a written, non-sworn report, and it

16  involved an adult claimant's "ability to work," rather than a child's ability to function at an age-

17  appropriate level.  <u>Stout</u>, 454 F.3d at 1053.  However, the Commissioner does not suggest, nor

18  cite any authority suggesting that a different rule applies to a lay report in an SSI case involving a

19  child.  Moreover, <u>Stout</u> cites to 20  C.F.R. § 416.913(d), which specifically addresses the severity

20  of a child's impairment.  Accordingly, since the <u>Stout</u> rule is consistent with the regulations

21  regarding the severity of a child's impairment, the court applies the rule articulated in <u>Stout</u>.

22         Here, there is no evidence in the record showing that the ALJ considered Ms. Rusk's

23  Teacher Inquiry, or that he was even aware of it.  Yet, the Teacher Inquiry is particularly relevant

24  to the issue of plaintiff's impairments because (1) it was made just two months before the ALJ's

25  hearing, (2) it was made by a teacher who, in her professional capacity, had both long-term and

26  current, day-to-day interactions with plaintiff, (3) it specifically addresses plaintiff's six domains

27  of functioning, and (4) it is consistent with the other reports of plaintiff's functioning.

28  Accordingly, it was legal error not to consider and discuss the Teacher Inquiry.

2.      Non-consideration of the Teacher Inquiry was not harmless error

The Commissioner argues that the failure to consider the Teacher Inquiry was "harmless," because "the ALJ discussed the school records that contained the same information, in more detail, as Ms. Rusk's form." ECF No. 16 at 11.  The court disagrees.

First, the Commissioner is not correct in arguing that "Ms. Rusk's responses summarized and reflected the same information contained" in the school reports.  Id.  Ms. Rusk's report is written as a first-hand report of what Ms. Rusk herself saw and witnessed of plaintiff's functioning.  See  AR 282-84.  Nothing in her report indicates that she was summarizing or reflecting school records.

Second, the ALJ's reading of the school reports is that plaintiff showed "steady improvement," and "overall progress."  See AR 29.  Ms. Rusk's report is entirely consistent with this conclusion, but her report shows that even with improvement and progress, plaintiff is still impaired in each of the domains.  Overall, she finds that academically plaintiff is a year behind his chronological age, and that socially he is three years behind his chronological age.  AR 282 ¶ 6. By paying attention only to the school records that reported "improvement" and "progress," the ALJ missed the important caveat – clearly laid out in Ms. Rusk's report – that even with his improvement and progress, plaintiff was still impaired, and was unable to function at an age-appropriate level in each of the six domains.

The Commissioner also argues that the ALJ's failure to mention or consider the Teacher Inquiry was harmless because "the ALJ properly considered evidence from examining psychologists, speech pathologists, State agency non-examining physicians, and school records and teach evaluations."  ECF No. 16 at 11.  It is not clear to the court exactly what legal point the Commissioner is making here.  The Commissioner does not expressly argue, as she does in regard to other evidence, that ignoring the Teacher Inquiry was harmless error because "substantial evidence" supported the ALJ's conclusion.  Nor does she argue that the ALJ may simply disregard some relevant evidence so long as he considers other relevant evidence.  The court will not make up a legal argument for the Commissioner here; if she wishes to tell the court what the legal significance is of her assertion, she should have done so.

1     It is particularly difficult to know what legal point the Commissioner is making, since the

2     cited evidence supports, rather than contradicts, the Teacher Inquiry.  As discussed above, the

3     examining psychologist found that plaintiff was "functioning in the lower extreme range of

4     General Cognitive Ability."  AR 302.  This is entirely in line with Ms. Rusk's assessment that

5     plaintiff was a year behind his chronological age cognitively, and that he "has significant

6     impairments in memory, visual processing, and attention."  AR 283.  Ms. Rusk's assessment was

7     also consistent with the speech pathologist's assessment that plaintiff's "language age" was a year

8     and 8 months below his chronological age.  AR 307.

9     As for the State agency non-examining physicians, they marked "less than marked" for

10    the Acquiring and Using Information domain.  AR 311.  However, their "explanation" is entirely

11    consistent with Ms. Rusk's assessment: "Language skills severely delayed.  May have language

12    disability and possible learning disability . . .."  AR 314.

13    The court finds that it is not harmless error for the ALJ to silently disregard a timely and

14    probative teacher's report that directly contradicts the ALJ's conclusions.  The Teacher Inquiry

15    covers all six domains, and therefore consideration of them could change the outcome of the

16    ALJ's decision.  Indeed, the ALJ's statements particularly regarding the Interacting domain, that

17    plaintiff "has not had significant behavior problems," indicates that he was not even aware of the

18    Teacher Inquiry.

19    This matter will be remanded to the Commissioner for consideration of the Teacher

20    Inquiry.

21    B.     The ALJ Committed Legal Error in His Treatment of the Consulting Doctors

22    The ALJ rejected the conclusion of the non-examining doctors, who had concluded that

23    plaintiff had "marked" limitations in the domain of Interacting and Relating with Others.  ECF

24    No 29 & 32-33.  The ALJ explained that plaintiff "has 'time outs' as noted by his teachers related

25    to distraction and inattention, but nothing that shows he has significant difficulty getting along

26    with other people."  AR 29.  The ALJ further explained that while plaintiff's "speech and

27    language delay causes some difficulty in communication," there is "nothing that reaches the level

28    of marked limitation as suggested."  Id.  In summary, the ALJ concluded that plaintiff "has

1    friends at school, and has not had significant behavior problems in getting along with others."

2    AR 33.

3         "The Commissioner may reject the opinion of a non-examining physician by reference to

4    specific evidence in the medical record." Sousa v. Callahan, 143 F.3d 1240, 1244-45 (9th

5    Cir. 1998) (a Title II case); see also, 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical . . .

6    consultants . . . are highly qualified physicians . . . who are also experts in Social Security

7    disability evaluation.  Therefore, administrative law judges must consider findings and other

8    opinions of State agency medical . . . consultants . . . as opinion evidence").

9         The ALJ here did not refer to specific evidence in the record in rejecting the non-

10   examining doctors' conclusion.  Indeed, the general references he makes to the record are

11   contradicted by the record itself.  The ALJ indicates that it is "distraction and inattention" that

12   affects this plaintiff's domain of Interaction and Relating with Others.  But the record does not

13   indicate that.  The record shows that every piece of evidence making reference to this domain

14   refers to plaintiff's aggressive behavior as the problem.  See AR 293 (Dr. Kassam reports on

15   plaintiff's "severe behavior problems," and that he is "very aggressive"); AR 365 (March 2011

16   IEP reports plaintiff is "physically aggressive toward children on the playground"); AR 396

17   (March 2012 IEP reports plaintiff displays disruptive behaviors "that impede his learning and the

18   learning of others," "physical aggression toward peers," and "has aggressive acts toward a peer 3

19   out [of] 5 days a week").

20        Moreover, the ALJ asserts that one reason he is rejecting the non-examining doctors'

21   conclusion is that the record shows that plaintiff "has 'time outs' as noted by his teachers related

22   to distraction and inattention."  That is not what the record shows.  The only reference in the

23   record to "daily time outs" is a note on plaintiff's Second Grade Report Card.  AR 388.  That note

24   does not attribute the time outs to "distraction and inattention," but to plaintiff's failing to keep

25   his hands to himself – in other words, aggression – as well as his failure to follow directions.[6]

26   _____

27   [6] The ALJ's characterization of the record in this manner is particularly notable because, in the
     immediately preceding paragraph, he correctly identifies the "daily time outs" as being related to
     plaintiff's failure to keep his hands to himself and his failure to follow directions.

28

1   The ALJ further explains his rejection of the non-examining doctors' conclusion by

2   stating that "nothing shows that he has significant difficulty getting along with other people."

3   AR 29.  Once again, the record, cited above, shows that plaintiff displays "aggression" toward his

4   peers, which includes "hitting, pushing, shoving, screaming," AR 396 (March 2012 IEP),

5   "biting," id., and "punching," AR 283 (Teacher Inquiry by Ms. Rusk), that he does not cooperate

6   with others, id., and that he does not respect and care for the possessions of others, id.  Indeed, the

7   only evidence in the record tending to support the ALJ's conclusion here is that plaintiff is noted

8   to be a "sweet boy."  See, e.g., AR 365.  But even the evidence noting that plaintiff is a sweet boy

9   also talks about his aggression toward his peers.  Id. (plaintiff "is a very sweet and affectionate

10  little boy," however he "can become physically aggressive toward children on the playground");

11  AR 396 (plaintiff "can be a very sweet and loving little boy," but he "also displays physical

12  aggression toward peers").

13      The ALJ further explains his rejection of the non-examining doctors' conclusion by

14  stating that plaintiff "has friends at school."  AR 33.  However, there is no citation to the record to

15  support this conclusion, nor any explanation of its relevance in any event.  In fact, the record

16  evidence about plaintiff's friends comes from the testimony of plaintiff's mother and the report of

17  Dr. Kassam.  When asked if Kevin has friend in the neighborhood, the mother answered "Yes . . .

18  barely."  AR 62.  She did say that he has friends at school.  Id.  However, when asked if plaintiff

19  gets together with relatives and family members, plaintiff's mother answered "Not that much,

20  sometimes; depends on . . . the holidays or --," at which point she was cut off by the ALJ moving

21  on to questions about the mother's work.  AR 62.

22      The only other evidence directly related to this point come from Dr. Kassam, who stated

23  "He has difficulty sustaining emotional connections with other children.  He has trouble keeping

24  friends."  AR 293.  If this is the evidence the ALJ relied upon to reject the examining doctors'

25  opinions, he committed clear error.  The domain of Interacting and Relating with Others does not

26  involve just "having friends," even for the pre-school child plaintiff was when he was examined

27  by Dr. Kassam.  The child is seen as functioning if he can choose his own friends and "play

28  cooperatively with other children."  See 20 C.F.R. § 416.9216a(i)(2)(iii).  The court is unable to

1   find any evidence in the case record that plaintiff was capable of playing cooperatively with other

2   children.  The evidence documents not cooperative play, but interactions with other children,

3   whether described as friends or not, that always involved violence.  See, e.g., AR 283 (Teacher's

4   Inquiry by Ms. Rusk reports that plaintiff "has difficulty interacting with peers without conflict

5   (hitting, biting, punching)").

6          Finally, the ALJ explained his rejection of the non-examining doctors' conclusion by

7   stating that "speech and language difficulties, which may make interpersonal communication

8   difficult," did not cause "marked limitation in this domain."  AR 33.  The ALJ appears to be

9   addressing a confusing entry in the non-examining doctors' report.  The report concludes that

10  plaintiff has "marked" limitations in his Interaction and Relating with Others, but in the space for

11  comments, the doctors discuss only his language delay.  AR 311.  However, in the "Case

12  Summary," the doctors included the remainder of their comments relating to this domain.  There,

13  they write: "claimant was noted to have severe behavior problems w/hyperactivity, destructive

14  and disruptive behavior.  He is aggressive . . .."  AR 314.  The ALJ makes no reference to the

15  conclusions about plaintiff's behavior, and indeed, there is no indication that he was even aware

16  of it.  Accordingly, the ALJ fails to adequately explain why he rejected the doctors' conclusions

17  relating to plaintiff's severe behavior problems and his marked limitations in that area, by

18  reference to specific evidence in the record.

19         The ALJ's failure to adequately explain his rejection of the non-examining doctors'

20  conclusions was legal error.  This matter will be remanded for further consideration of those

21  conclusions, and an explanation with citation to specific evidence in the record, if they are again

22  rejected.

23         C.      The ALJ Committed Legal Error in His Treatment of Dr. Kassam's Report

24         Plaintiff argues that the ALJ improperly rejected Dr. Kassam's report.  ECF No. 13-1

25  at 17-18.  The Commissioner argues that the ALJ did not reject the report, but rather that he

26  "interpret[ed] Dr. Kassam's report as indicating less than marked limitation."  ECF No. 16 at 13.

27  The record before the court does not support either argument.  While the ALJ recites

28  Dr. Kassam's findings at the outset of his examination of the medical evidence, he makes no

further reference to it, whether directly or indirectly.  There is simply no way for this court to know whether the ALJ rejected Dr. Kassam's report, ignored it, or incorporated it into his conclusions.  The ALJ's conclusion does make reference to plaintiff's language difficulties, a matter covered by Dr. Kassam's report, but it makes no reference, directly or indirectly, to Dr. Kassam's findings regarding plaintiff's "severe behavior problems," his "destructive and disruptive behavior," his "very aggressive" nature, his "difficulty sustaining emotional connections with other children," or his "trouble keeping friends."  See AR 293.

Because Dr. Kassam was an examining doctor, the ALJ could not ignore the doctor's findings, nor simply fail to address them.  See Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) ("As is the case with the opinion of a treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician").  The Commissioner is correct that Dr. Kassam did not specifically find that plaintiff had a "marked limitation" in any domain.  However, that does not leave the ALJ free to ignore the report and the diagnoses Dr. Kassam makes.

Accordingly, it was legal error for the ALJ to fail to explain how, or whether, Dr. Kassam's report affected the outcome here.  The matter will be remanded to the ALJ to consider and explain his consideration, of Dr. Kassam's report.

> D.    The ALJ Did Not Err in Finding "No Limitations" in the Domain Caring for Yourself and "Less Than Marked Limitation" in the Domain Health and Physical Well-Being

Plaintiff argues that the ALJ erred in failing to analyze the effect of plaintiff's bowel and urinary difficulties on the domains of Caring for Himself and Health and Well-Being.  ECF No. 13-1 at 20-23.  Specifically, plaintiff asserts that plaintiff "was not fully toilet trained and wet the bed most every night," citing the assessment of plaintiff's "cognitive functioning" written by John A. Chellsen, Ph. D., and the testimony of plaintiff's mother.  Plaintiff concludes that this "at least reflects marked limitations in the domain of Caring for Yourself or Health and Physical Well-Being.  Id., at 21.

////

22

1    The court finds no legal error in the ALJ's findings regarding these domains.  While the

2    ALJ must have "substantial evidence" for his decision, plaintiff has the burden of making at least

3    a prima facie case of disability.  Roberts, 66 F.3d at 182.  Accordingly, the ALJ's decision is

4    supported by substantial evidence if plaintiff fails to meet his burden.  Id. ("[t]he Secretary's

5    decision that Roberts was not disabled due to obesity was supported by substantial evidence

6    because Roberts failed to carry the burden of showing that she met the duration requirement").

7    Here, plaintiff does no more than point to evidence that plaintiff wets the bed and has "accidents"

8    at school, and then simply asserts that "this certainly at least reflects marked limitations" in the

9    two domains.  ECF No. 13-1 at 21.  A bare assertion of disability is not enough.  See 20 C.F.R.

10   § 416.924a(a) (Commissioner's decision is based upon medical "evidence" and "information"

11   from other sources).  Plaintiff identifies no medical basis for concluding that bed-wetting or

12   accidents at plaintiff's age is a medical issue or creates a marked limitation on his functioning in

13   either of the domains.  Moreover, plaintiff points to nothing in the regulations suggesting that

14   bed-wetting and "accidents" constitute a limitation on functioning in these domains.

15   Plaintiff attempts to put a medical spin on his bare assertion by claiming that Dr. Chellsen

16   "observed" that the plaintiff had these problems.  ECF No. 13-1 at 21.  In fact, Dr. Chellsen only

17   reported what plaintiff's mother told him about the toileting issues.  He did not make any

18   observations or conclusions about it.  AR 384 (Dr. Chellsen reporting "Parental concern").  Even

19   if he had made his own observations, Dr. Chellsen was only called upon to opine on plaintiff's

20   "cognitive functioning," not his toilet training.  Id.  In short, plaintiff has identified no medically

21   determined opinion or evidence anywhere in the case record showing that plaintiff had a marked

22   limitation in these two domains.  The ALJ did not err in so finding.[7]

---

[7]  The ALJ also relied upon the Childhood Disability Evaluation Form.  AR 29; AR 309-15
(Exhibit 6F).  He found that "No limitations were noted for . . . Caring for Yourself, or Health and
physical well-being."  AR 29.  While the ALJ's description of that form is technically correct, it
leaves the impression that the consulting doctors marked the "no limitations" check-off boxes on
the form.  They did not.  Rather they simply did not check off any of the boxes, but instead left
them blank.  AR 311 & 312.  Accordingly, to the degree the ALJ concluded that the consulting
doctors had affirmatively found that there were "[n]o limitations" for those domains, he was in
error.  However, any error was harmless, as the ALJ is correct that there is no evidence in the
(continued…)

1

VII.  CONCLUSION

2       For the reasons set forth above, IT IS HEREBY ORDERED that:

3       1.  Plaintiff's motion for summary judgment (ECF No. 13), is GRANTED;

4       2.  The Commissioner's cross-motion for summary judgment (ECF No. 16), is DENIED;

5  and

6       3.  This matter is REMANDED for further proceedings consistent with this order.

7  DATED: February 5, 2015

8

_Allison Claire_
ALLISON CLAIRE

9       UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25  record sufficient to suggest a marked limitation in these domains.  Moreover, since this form was

26  completed by non-examining doctors, their opinions would be drawn from other evidence in the
   record (as were the opinions they did express), none of which shows any marked limitations in

27  these domains.

28

24